UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

INVESTMENT COMPANY OF THE
SOUTHWEST, INC.,

    Plaintiff,

vs.                                              10-CV-587 JP/LFG

UNITED STATES OF AMERICA,
CITY OF ALBUQUERQUE, NEW MEXICO,
HERBERT L. MARCHMAN, Trustee of the Shareholder
Liquidating Trust Dated June 1, 1988,
DIAMOND ROCK DEVELOPMENT, INC.,
SOUTHWEST DEVELOPMENT GROUP, LLC,
ENCHANTMENT INVESTMENTS, LTD.,
GETTYSBURG, LTD., and
HINKLE LAND INVESTMENT, LLC,

    Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (Doc. No. 44)**

On September 29, 2010, Defendant the United States of America ("United States") filed United States' Rule 12(b)(1), Fed. R. Civ. P. Motion To Dismiss Plaintiff's Complaint Due To Lack Of Subject Matter Jurisdiction (Doc. No. 44) ("Motion"). On October 18, 2010, Investment Company Of The Southwest ("Investment Company") filed Plaintiff's Response To The United States' Fed. R. Civ. P. 12(b)(1) Motion To Dismiss Plaintiff's Complaint Due To Lack Of Subject Matter Jurisdiction (Doc. No. 49) ("Response"). On November 8, 2010, the United States filed United States' Reply To Plaintiff's Response To Rule 12(b)(1) Motion To Dismiss Plaintiff's Complaint Due To Lack Of Subject Matter Jurisdiction (Doc. No. 61) ("Reply"). Because the Complaint was filed within the twelve-year statute of limitations under

1

the Quiet Title Act, 28 U.S.C. § 2409a(g), the Court will deny the Motion.

I.  Background

Investment Company owns a piece of property located in the far southeastern corner of Bernalillo County described as Section 36, Township 10 North, Range 4 East, N.M.P.M., Bernalillo County, New Mexico: Lots 3 and 4; NE¼ SW¼ ("Investment Company Property"). Defendants Southwest Development Group; Enchantment Investments, Ltd.; Herbert L. Marchman, Trustee of the Shareholder Liquidating Trust dated June 1, 1988; Diamond Rock Development, Inc.; Gettysburg, Ltd.; Hinkle Land Investments, LLC; and the City of Albuquerque own parcels of land in Section 36, Township 10 North, Range 4 East, N.M.P.M., Bernalillo County, New Mexico. The Court will refer to all of these parties as the "Section 36 Owners."

The United States owns a piece of property directly south of Section 36, located in Section 1, Township 9 North, Range 4 East, N.M.P.M., Bernalillo County, New Mexico, which is occupied by Kirtland Air Force Base ("KAFB Property" or "Section 1").  The north boundary of  Section 1 is supposed to be the same as the south boundary of Section 36 ("Common Section Boundary"). The Common Section Boundary is also the dividing line between Township 10 North and Township 9 North.

Prior to 1906, Sections 1 and 36 were United States' public lands that were surveyed as part of the Public Land Survey System. In 1947, Kirtland Air Force Base ("KAFB") acquired Section 1 by eminent domain. (Mot. Ex. 5, Declaration of Taking.)  In 1950, the United States ordered a survey of Section 1 to determine the boundary line between Sections 1 and 36. The survey was performed by Black & Veatch surveyors ("Black Survey").  In 1950, KAFB erected a fence along the boundary shown on the Black Survey ("Original KAFB Fence"). The Original

KAFB fence was in place for more than 50 years.

In 1992, the United States Department of Defense ordered another survey of the boundary between Sections 1 and 36 from Koogle & Pouls Engineering, Inc. ("Koogle Survey"). The Koogle Survey showed the boundary between Sections 1 and 36 at an angle to and farther north than the boundary shown by the Black Survey. The Koogle Survey showed that a 40-acre triangular shaped piece of property that had previously been considered part of Section 36 was instead part of Section 1.

On October 4, 1995, Mark S. Aucker recorded an instrument entitled "Deed" ("Aucker Deed") in the Bernalillo County real property records.  Under the Aucker Deed, Mr. Aucker claimed that he owned a triangular shaped piece of property consisting of approximately 43.549 acres ("Aucker Triangle Property").  The Aucker Triangle Property appears to encompass the 40-acre piece of property that was included in Section 1 by the Koogle Survey but that was formerly thought to be part of Section 36. (Mot. Ex. 1.)

On November 22, 1995, Mr. Aucker purported to transfer his ownership of the Triangle Property to Mesa Investments Group, Inc. ("Mesa") by a deed that was recorded in the Bernalillo County real property records. (Mot. Ex. 2.)

On August 21, 1996, Mesa purported to transfer its interest in the Triangle Property to the United States by Quit Claim deed ("Mesa Deed"), which was also recorded in the Bernalillo County property records.

Beginning in 1998, the Bernalillo County Treasurer issued property tax assessments for the Triangle Property to KAFB. (Mot. Ex. 4 at 8.) In 2008, Bernalillo County issued a land ownership map showing a triangular shaped property located in Section 1. (*Id.* at 10.) The tax assessments and the property map are public records.

Investment Company acquired title to the Investment Company Property from Four Hills Associates of the Southwest, Inc. by Special Warranty Deed on June 4, 2001.

In January 2006, KAFB began building a new fence along the boundary line shown on the Koogle Survey ("New KAFB Fence").

### A.  The 2007 BLM Dependent Resurvey

In January 2007, Hinkle Homes Company, predecessor in interest to Defendant Diamond Rock Development, Inc.,[1] requested that the Bureau of Land Management ("BLM") perform an official cadastral survey to determine the location of the correct Common Section Boundary. On June 20, 2007, the BLM completed the survey ("Dependent Resurvey") of part of the east boundary of Township 9 North, Range 4 East, N.M.P.M. and part of the east and south boundaries of Township 10 North, Range 4 East, N.M.P.M. The Common Section Boundary shown on the Dependent Resurvey is located south of the boundary shown on the Koogle Survey and north of the boundary on which the Original KAFB Fence was built. The Dependent Resurvey shows the location of a monument, which was allegedly set in 1881 by a surveyor named Holden R. Warner ("1881 Corner Monument"). Investment Company alleges that the 1881 Quarter Corner is the "controlling corner on the Common Section Boundary." (Compl. at ¶ 25.)

After completion of the Dependent Resurvey, the BLM published its findings in a Notice of Filing in the Federal Register. *Notice of Filing of Plats of Survey; New Mexico*, 72 Fed. Reg. 38100 (July 12, 2007).  On August 10, 2007, KAFB filed a protest to the Dependent Resurvey

---

[1] Defendant Diamond Rock Development, Inc. owns a piece of property described as Section 36, Township 10 North, Range 4 East, N.M.P.M., Bernalillo County, New Mexico: Lot 2; NW¼ SE¼. (Compl. at ¶ 7.)

4

with the New Mexico State BLM Director.  On October 15, 2007, the BLM State Director rejected KAFB's protest, and KAFB appealed to the United States Department of the Interior, Interior Board of Land Appeals ("IBLA").

On December 16, 2008, Mr. Robert A. Casias, Chief Cadastral Surveyor in the New Mexico State BLM office, informed Hinkle Homes Company by letter that the BLM intended to withdraw the Dependent Resurvey because the BLM had not been authorized to perform the Dependent Resurvey.  According to Mr. Casias, the BLM failed to obtain the required written permission from KAFB to perform the Dependent Resurvey. (Resp. Ex. B.)

On January 13, 2009, the IBLA entered an Order ("IBLA Order") in which the IBLA granted the BLM's request to set aside the Dependent Resurvey and to remand the protest. (Mot. Ex. 2.) In January 2009, the BLM withdrew the Dependent Resurvey. *Notice of Withdrawal of Filing of Plat of Survey; New Mexico*, 74 Fed. Reg. 4458 (Jan. 26, 2009).

### B.  This Lawsuit

On June 18, 2010, Investment Company filed the Complaint For Declaratory Judgment (Doc. No. 1) ("Complaint") in which Investment Company asks the Court to enter a declaratory judgment: 1) that the Dependent Resurvey is the best evidence of the location of the Common Section Boundary; 2) that the Dependent Resurvey correctly depicts the location of the Common Section Boundary; and 3) that the Common Section Boundary is located as shown on the Dependent Resurvey. (Compl. at 8.) Alternatively, Investment Company asks the Court to declare that there has been a longstanding dispute between the United States and the Section 36 Owners as to the location of the Common Section Boundary that is sufficient to warrant the Court's application to the BLM to conduct a cadastral resurvey of the Common Section

Boundary under 43 U.S.C. § 773.[2] (*Id.* at 8-9.)

      II.  The United States' Motion

The United States contends, and Investment Company does not dispute, that although the Complaint asks for a declaratory judgment, the Complaint actually asserts a cause of action under the Quiet Title Act, 28 U.S.C. § 2409a et seq. ("QTA").  In the Motion, the United States asks the Court to dismiss the Complaint for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) because Investment Company's claim is barred by the twelve-year statute of limitations set forth in the QTA. The relevant part of the QTA provides,

> (g) Any civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest **knew or should have known of the claim of the United States**.

28 U.S.C. § 2409a(g) (emphasis added). "Timeliness under subsection [g] is a jurisdictional prerequisite to suit under section 2409a." *Knapp v. United States*, 636 F.2d 279, 282 (10th Cir. 1980). The United States argues that Investment Company's cause of action accrued on August 16, 1996 the date on which the Mesa Deed was filed of record because the Mesa Deed gave constructive notice of the United States' claim to the Triangle Property and the resulting boundary dispute between Section 1 and Section 36. Because the Mesa Deed was recorded

---

[2] Section 773 states in relevant part,
[u]pon the application of the owners of three-fourths of the privately owned lands in any township covered by public-land surveys, more than 50 per centum of the area of which townships is privately owned, . . . the Secretary [of the Interior], or such officer as he may designate, shall be authorized in his discretion to cause to be made a resurvey or retracement of the lines of said township and to set permanent corners and monuments in accordance with the laws and regulations governing surveys and resurveys of public lands. . . . Similar resurveys and retracements may be made on the application, accompanied by the requisite deposit, of any court of competent jurisdiction, the returns of such resurvey or retracement to be submitted to the court. . .
43 U.S.C. § 773.

thirteen years and ten months prior to the date the Complaint was filed, the United States contends that the Complaint is time-barred and must be dismissed for lack of jurisdiction.

Investment Company counters that the Mesa Deed was never part of its chain of title to Section 36; therefore, the Mesa Deed could not provide constructive notice of the United States' claim to the Triangle Property or of the boundary dispute. Investment Company asserts that it first became aware of the boundary dispute with the United States in 2006, when KAFB began building the New KAFB Fence. Investment Company asserts that since the Complaint was filed only four years after the start of the New KAFB Fence, the Complaint is timely and should not be dismissed.

### A. Standard of Review

As a general rule, Rule 12(b)(1) motions to dismiss for lack of jurisdiction take one of two forms: (1) facial attacks; and (2) factual attacks. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir.1995). A facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint, and a court must accept the allegations in the complaint as true. *Id.* at 1002. In a factual attack, the movant goes beyond the allegations in the complaint and challenges the facts upon which subject matter jurisdiction depends; therefore, the court must look beyond the complaint at documentary and even testimonial evidence. *Id.* at 1003. In the Motion, the United States has presented documentary evidence from the chain of title to the KAFB Property. In its Response, Investment Company has presented affidavits concerning its knowledge, or lack of knowledge, of the title documents and the resulting boundary dispute. Thus, the Motion is a factual attack concerning Investment Company's constructive notice of the United States' adverse claim to Investment Company's Property.

However, if resolution of the Motion, is "intertwined with the merits of the case," the

Court would be required to convert this Rule 12(b)(1) Motion into a Rule 12(b)(6) motion to dismiss for failure to state a claim or into a Rule 56 summary judgment motion. *Id.* The Court's determination of when this cause of action accrued, although related to the issue of title, will not involve a determination of title on the merits. The Court may determine when Investment Company knew or should have known of this boundary dispute without having to determine the legitimacy of each party's claim or the proper location of the Common Section Boundary. Thus, the Court may consider the evidence presented by both the United States and Investment Company to determine when the statute of limitations began to run without converting the Motion into a 12(b)(6) motion or into a summary judgment motion.

B. Constructive Notice

"Because [the QTA] limits the sovereign immunity of the United States, it must be interpreted according to federal law." *Amoco Production Co. v. United States*, 619 F.2d 1383, 1337 (10th Cir. 1980). Questions involving ownership, transfer and title to real estate, however, have traditionally been resolved according to the laws of the state where the realty is located. *Id.* The Motion requires the Court to determine the time that Investment Company had or should have had actual or constructive notice of the boundary dispute. Thus, the Court will look to New Mexico property law concerning actual or constructive notice, otherwise known as imputed notice. *Id.* [3]

New Mexico statutes provide that recorded instruments give "notice to all the world of the existence and contents of the instruments so recorded from the time of recording." NMSA 1978 § 14-9-2 (1991). However, a recorded instrument gives actual notice only to those who

---

[3] "Local practices and local rules are particularly indicative of whether a party should have known a relevant fact." *Amoco Production*, 619 F.2d at 1387.

have subsequent dealings with the property, and a recorded instrument, "imputes notice only to those who are bound to search for it." *Romero v. Sanchez*, 83 N.M. 358, 362, 492 P.2d 140, 144 (1971). The *Romero* court elaborated on the meaning of constructive notice:

> [U]nder the recording statutes, the proper record of an instrument authorized to be recorded is notice to all the world. But this means simply that the record is open to all, and is notice to interested parties. The record of an instrument is notice only to those who are bound to search for it. It is not a publication to the world at large. Those who, by the terms of the recording laws, are charged with constructive notice of the record of an instrument affecting land are, therefore, those who are bound to search the records for that particular instrument.

*Id.* at 143.

### C. The Mesa Deed

Even though Investment Company acquired title to Investment Company's Property in 2001, it will be charged with constructive notice of the Mesa Deed, recorded in 1996, if Investment Company's predecessor in interest knew or should have known of the United States' claim to any portion of the Investment Company Property. *Amoco Production*, 619 F.2d at 1577 (stating, ". . . [QTA] actions accrue on date plaintiff or his predecessor in interest knew or 'should have known' of claim of United States[.]").

The United States argues that in 1996, Investment Company's predecessor either knew or should have known of the United States' claim through the recording of the Mesa Deed. Investment Company's predecessor will be charged with constructive notice of the Mesa Deed if it should have discovered the Mesa Deed "in the exercise of ordinary diligence" in its dealings with its own property. *Romero*, 492 P.2d at 144. The United States argues that a report attached to Investment Company's Response to the United States 12(b)(6) motion illustrates the importance of the Mesa Deed. (*See* Resp. (Doc. No. 42) Ex. C.) The report dated August 1, 2008 was prepared by professional surveyor Roger A. Frank and is entitled "Review of Conflicting

Boundary Surveys, Kirtland AFB, NM (Specifically the North Line of Section 1, T9N, R4E, NMPM)" ("Boundary Report"). The Boundary Report was addressed to Mr. Alan Nichols of the United States Corps of Engineers. (*Id.*) In the Boundary Report, Mr. Frank describes the boundary problem, the Mesa Deed and the Triangle Property claimed by KAFB. The United States seems to argue that if Mr. Frank discovered the Mesa Deed and the related boundary dispute, then Investment Company should be charged with constructive notice of the Mesa Deed. However, the Boundary Report was commissioned in 2008 specifically to address the known boundary dispute between Sections 1 and 36. Thus, the fact that Mr. Frank analyzed the Mesa Deed in the Boundary Report does not necessarily mean that Investment Company's predecessor should have found the Mesa Deed in a reasonable title search of the Investment Company Property.

Investment Company has presented the affidavit of William K. Wooten, Vice President of Fidelity National Title Company, which issued a title commitment and policy to Investment Company in connection with its purchase of the Investment Company Property. Mr. Wooten testified, "[t]he title search relating to the lands in Section 36 would not have discovered, and it did not discover, [the Mesa] Quitclaim deed." (*See* Wooten Aff. ¶ 6.) Investment Company contends that its predecessor would not have discovered the Mesa Deed because it describes land south of Section 36, between Sections 1 and 36, in a "fabricated gap . . . that does not, in fact, exist." (Resp. at 4.) Investment Company maintains that since the Mesa Deed was never part of the Section 36 chain of title, Investment Company should not be charged with constructive notice of the United States' claim to additional property based on the Mesa Deed or the resulting boundary dispute revealed by the Mesa Deed.

Investment Company compares the Mesa Deed to the stray deed[4] described in *Amoco Production*, 619 F.2d at 1387.  In *Amoco Production*, Federal Farm Mortgage Corporation ("FFMC") conveyed property to Hyrum and Florence Newton in 1942 by a deed that did not reserve mineral rights to the property. In 1957, FFMC, under the impression that it had reserved a 50% mineral interest in the property, purported to transfer its mineral interest by quit claim deed to the United States. In 1960, Mr. and Mrs. Newton conveyed the property to the Newton Company, and beginning in 1971, the Newton Company leased all of the mineral rights to Amoco Production and several other oil and gas lessees. In 1976, Amoco Production and the other lessees filed a QTA suit against the United States. The United States argued that the 1957 recorded quit claim deed provided constructive notice of its claim to the mineral rights and that Amoco Production's cause of action filed in 1976 was time-barred. The district court and the Tenth Circuit Court of Appeals concluded that the action was not time-barred because the 1957 deed was a stray deed that would not have been discovered in a reasonable title search of the mineral rights to the property. The court concluded that knowledge the deed could not be imputed to Amoco Production and the other lessees. *Id.* at 1388.

Like the stray deed in *Amoco Production*, which would not have been discovered in a reasonable title search of mineral rights to the Newtons' property, the Mesa Deed, which purports to transfer property in Section 1 to the United States, would not have been discovered by a reasonable title search related to the Investment Company Property, which is in Section 36.

---

[4] A "stray" deed is a deed which is recorded outside of a purchaser's grantor-grantee chain of title. *Amoco Production*, 619 F.2d at 1387 n. 1. In that case, the court determined that Utah law was ambiguous on the issue of whether a person could be charged with constructive notice of a stray deed. However, the court held that, as a matter of federal law, Amoco Production could not be charged with constructive notice of the United States' claim to a mineral interest that the United States acquired by a stray deed. *Id.* at 1389.

Hence, Investment Company and its predecessor cannot be charged with constructive notice of the United States' interest in the property described in the Mesa Deed or of the boundary dispute revealed by the Mesa Deed. Thus, this cause of action did not accrue in 1996 when the Mesa Deed was recorded.

### D.  Reasonable Awareness Of Ongoing Boundary Dispute

Next, the United States argues that throughout the last fifty years, the Common Section Boundary, which is also the boundary between Township 9 North and Township 10 North, has been the subject of an ongoing dispute. The United States asserts that the Koogle Survey was commissioned in 1992 in response to this debate. The United States contends that Investment Company's predecessor should have been aware of the ongoing boundary dispute since at least 1992, when the Koogle Survey was completed. Alternatively, the United States asserts the Koogle Survey, which indicated that Section 1 included the Triangle Property, led the United States to acquire title to the Triangle Property through the Mesa Deed, which was made public when the United States recorded the Mesa Deed in 1996.

The United States cites as support *Vincent Murphy Chevrolet, Inc. v. United States,* 766 F.2d 449 (10th Cir. 1985).  In *Vincent Murphy*, the Tenth Circuit Court of Appeals strictly construed the statute of limitations under the QTA and ruled that constructive notice only requires a "reasonable awareness that the government claims some interest adverse to the plaintiff." *Id.* at 452 (citing, *Knapp v. United States*, 636 F.2d 279, 283 (10th Cir.1980)).  The United States argues that Investment Company's predecessor had a "reasonable awareness" of the ongoing township boundary dispute. However, the United States presents no evidence that Investment Company or its predecessor knew or should have known about the Koogle Survey, which neither side claims was recorded in the real property records. And as discussed *supra*,

Investment Company cannot be charged with notice of the Mesa Deed because it would not have appeared in the chain of title to the Investment Company Property. The United States has presented no basis upon which the Court can rule that Investment Company knew or should have known of the historical boundary dispute, the Koogle Survey, or the Mesa Deed. *See Amoco Production*, 619 F.2d at 1388 (stating, "[t]he doctrine of constructive notice, which creates a fiction and deals with hypothetical facts, is a harsh doctrine which should be resorted to reluctantly and construed strictly."). Thus, Investment Company cannot not be charged with constructive notice of the alleged ongoing dispute concerning the boundary between Township 9 North and Township 10 North.

### E.  The 1947 Eminent Domain Proceeding

Finally, the United States asserts that Investment Company should be charged with knowledge of the United States' adverse interest by the Declaration of Taking (Mot. Ex. 5) under which the United States took title to Section 1 in 1947. Although a copy of the Declaration of Taking is attached to the Memorandum in support of the Motion, the property description labeled as "Schedule A" in the Declaration of Taking is not attached. Thus, the Court, on the record before it, has no specific property description of the lands taken in the 1947 eminent domain case.

In its Complaint, Investment Company alleged, "the USA acquired title to Section 1 by eminent domain in 1947. Such lands were described by aliquot parts or fractional lots utilized in the Public Land Survey System that were **not specific as to physical line locations**." (Compl. at ¶ 10) (emphasis added). The United States made the same word for word allegation in its Motion at p. 16. Neither the United States nor Investment Company attempts to argue that the Declaration of Taking mentioned Section 36. According to the quote, *supra*, the Declaration of

Taking described the property taken as located in Section 1; therefore, the Declaration of Taking could not have provided notice that the United States claimed land that was considered part of Section 36.

After the eminent domain proceeding, the only evidence of the United States' claim to Section 1's north boundary, or Section 1's "physical line location[]," was the Original KAFB Fence constructed in 1950. The United States' adverse claim, however, stems from its attempt to place the location of the boundary of Section 1 to the north of the Original KAFB Fence.  From the Declaration of Taking, a Section 36 property owner, such as Investment Company's predecessor, would not have become aware of the United States' adverse interest in land north of the Original KAFB Fence. Instead, Investment Company would only have become aware of the United States' adverse claim in 2006, when the United States manifested its intent to move the Original KAFB Fence and build the New KAFB Fence.

F.  The New KAFB Fence

Investment Company asserts that at the earliest, its cause of action accrued in 2006, when the United States first disclosed its claim that the northern boundary of Section 1 was farther north than the Original KAFB Fence. The Court agrees.  The evidence shows that prior to 2006, when the United States began construction of the New KAFB Fence, there was no indication that the United States claimed to own land beyond the Original KAFB Fence, either in the property records or on the ground.  The record does not contain evidence showing that prior to 2006 Investment Company or its predecessor had either actual notice or constructive notice that the United States claimed ownership of land north of the Original KAFB Fence. It was only when the Air Force began to construct the New KAFB Fence that Investment Company could reasonably have been aware of the United States' claim to Investment Company Property

previously considered to have been part of Section 36. Therefore, Investment Company's cause of action accrued at the earliest in 2006, and Investment Company's June 18, 2010 Complaint was filed well within the twelve year statute of limitations in the QTA.[5]

IT IS ORDERED that the United States' Rule 12(b)(1), Fed. R. Civ. P. Motion To Dismiss Plaintiff's Complaint Due To Lack Of Subject Matter Jurisdiction (Doc. No. 44) is denied.

_____
UNITED STATES SENIOR DISTRICT JUDGE

---

[5] In the alternative, the United States argues that the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) because it fails to comply with 28 U.S.C. § 2409a(d). Section 2409a(d) requires a complaint to "set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property [and] the circumstances under which it was acquired. . . ." 28 U.S.C. § 2409a(d). The Complaint, however, states with sufficient particularity how Investment Company acquired its property and the circumstances under which this boundary dispute arose. (Compl. ¶¶ 15-26.) Hence, this alternative basis upon which to dismiss the Complaint is without merit.