UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

INVESTMENT COMPANY OF THE
SOUTHWEST, INC.,

    Plaintiff,

vs.                                                    10-CV-587 JP/LFG

UNITED STATES OF AMERICA,
CITY OF ALBUQUERQUE, NEW MEXICO,
HERBERT L. MARCHMAN, Trustee of the Shareholder
Liquidating Trust Dated June 1, 1988,
DIAMOND ROCK DEVELOPMENT, INC.,
SOUTHWEST DEVELOPMENT GROUP, LLC,
ENCHANTMENT INVESTMENTS, LTD.,
GETTYSBURG, LTD., and
HINKLE LAND INVESTMENT, LLC,

    Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (Doc. No. 51)**

On October 22, 2010, Defendant the United States of America ("United States") filed United States' Rule 12(b)(1) Fed. R. Civ. P. Motion To Dismiss Defendants Diamond Rock Development's and Herbert Marchman's Crossclaim Against The United States Due To Lack Of Subject Matter Jurisdiction (Doc. No. 51) ("Motion") and United States' Memorandum In Support of Rule 12(b)(1) Fed. R. Civ. P. Motion To Dismiss Defendants Diamond Rock Development's and Herbert Marchman's Crossclaim Against The United States Due To Lack Of Subject Matter Jurisdiction (Doc. No. 52). On November 8, 2010, Defendants Diamond Rock Development, Inc. ("Diamond Rock") and Herbert L. Marchman ("Marchman"), as trustee of the

1

Shareholder Liquidating Trust Dated June 1, 1988,[1] filed the Response Of Diamond Rock Development, Inc. And Herb Marchman To United States' Rule 12(b)(1) Fed. R. Civ. P. Motion To Dismiss (Doc. No. 63) ("Response"). On November 19, 2010, the United States filed the United States' Reply To Response Of Diamond Rock Development, Inc. And Herb Marchman To United States' Rule 12(b)(1) Fed. R. Civ. P. Motion To Dismiss Crossclaim Due To Lack Of Subject Matter Jurisdiction (Doc. No. 70) ("Reply"). Because Diamond Rock and Marchman filed their Answer To Complaint For Declaratory Judgment And Counterclaim And Crossclaim (Doc. No. 24) within the twelve-year statute of limitations under the Quiet Title Act, 28 U.S.C. § 2409a(g), the Court will deny the Motion.[2]

   I.  Standard of Review

Rule 12(b)(1) motions to dismiss for lack of jurisdiction are characterized as either (1) facial attacks or (2) factual attacks. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). A facial attack is limited to the factual allegations supporting the claim, which a court

---

[1] Shareholders Liquidating Trust has also been known as the Burroughs Liquidating Trust. (Doc. No. 1, Compl. ¶ 6.)

[2] On December 13, 2010, the Court issued a Memorandum Opinion and Order (Doc. No. 85) denying the United States' Motion To Dismiss Plaintiff Investment Company's claim under the Quiet Title Act (Doc. Nos. 44 and 45). While recognizing the factual differences presented here, the United States makes similar legal arguments to support this Motion and also incorporates the exhibits from its Memorandum In Support of Rule 12(b)(1), Fed. R. Civ. P. Motion To Dismiss Plaintiff's Complaint Due To Lack Of Subject Matter Jurisdiction (Doc. No. 45) and in its Memorandum In Support Of Rule 12(b)(6), Fed. R. Civ. P., Motion To Dismiss For Plaintiff's Failure To State A Claim Upon Which Relief Can Be Granted (Doc. No. 33). In addition to the arguments asserted in their Response (Doc. No. 63), Diamond Rock and Marchman incorporate Investment Company's legal arguments and exhibits from Plaintiff's Response To The United States' Fed. R. Civ. P. 12(b)(1) Motion To Dismiss Plaintiff's Complaint Due To Lack Of Subject Matter Jurisdiction (Doc. No. 49). The Court considered the incorporated arguments and exhibits in connection with this Memorandum Opinion and Order and will refer to exhibits by docket number and exhibit number or letter.

must accept as true. *Id.* at 1002. In a factual attack, the movant goes beyond the allegations in the pleadings and challenges the facts upon which subject matter jurisdiction depends. When faced with a factual attack, a court must look beyond the pleadings at documentary and even testimonial evidence. *Id.* at 1003. Because the parties have presented documentary and testimonial evidence, the Motion and the Response present a factual dispute.[3]

   I.  Background

   Diamond Rock owns a piece of property in Section 36, Township 10 North, Range 4 East, N.M.P.M., Bernalillo County, New Mexico: Lot 2 and NW1/4 SE1/4 ("Diamond Rock Property"). Marchman owns a piece of property located in Section 36, Township 10 North, Range 4 East, N.M.P.M., Bernalillo County, New Mexico: SW1/4 SE1/4  ("Marchman Property"). Marchman acquired the Marchman Property on June 1, 1988 by warranty deed from the Burroughs Broadcasting Company, which acquired the Marchman Property in 1958 from the State of New Mexico. (Doc. No. 63, Ex. 2.) Diamond Rock's predecessor in interest, Mr. Gene Hinkle, acquired the Diamond Rock Property in 1958 from the State of New Mexico. Mr. Bryan Hinkle, Gene Hinkle's son, is the president of Diamond Rock. The deeds to the Diamond Rock Property and the Marchman Property describe the respective properties by lot and by fractions of sections instead of by metes and bounds. Descriptions of this nature are used in the Public Land Survey System and are not specific as to physical line location. (Ans. Countercl. Cross-cl. ¶ 13.) Diamond Rock is involved in a joint venture with Marchman to develop their properties. (Doc. No. 63, Ex. 1, Bryan Hinkle Decl. ¶¶ 2-3.) Other owners of property in Section 36, Township 10

---

[3] Although the Motion asks for dismissal of the crossclaim in the singular, the Court will refer to crossclaims in the plural because Diamond Rock and Marchman each assert two crossclaims against the United States.

North, Range 4 East, N.M.P.M., are Plaintiff Investment Company of the Southwest, Defendant Southwest Development Group, LLC, Defendant Enchantment Investments, Ltd., Defendant Gettysburg, Ltd., Defendant Hinkle Land Investments, LLC; and Defendant City of Albuquerque ("Section 36 Owners").[4]

The United States owns a piece of property directly south of Section 36, located in Section 1, Township 9 North, Range 4 East, N.M.P.M., Bernalillo County, New Mexico ("KAFB Property" or "Section 1"), which is occupied by Kirtland Air Force Base ("KAFB"). The north boundary of Section 1 is supposed to be the same as the south boundary of Section 36 ("Common Section Boundary"). The Common Section Boundary is also part of the dividing line between Township 9 North and Township 10 North, Range 4 East, N.M.P.M., Bernalillo County New Mexico.

In the late 1800s and early 1900s, the United States transferred to the State of New Mexico a large tract of land which included Sections 1 and 36. (Doc. No. 29 ¶ 26, Exs. A-E.) In 1947, the United States reacquired a large tract of land including Section 1 by eminent domain, which is now occupied by Kirtland Air Force Base ("KAFB"). (Mot. Ex. 5, Declaration of Taking.) In 1950, the United States ordered a survey from Black & Veatch surveyors to determine the boundaries of KAFB including the boundary line between Sections 1 and 36 ("Black Survey"). In the early 1950s, KAFB erected a fence along the boundary shown on the Black Survey ("Original KAFB Fence"). The Original KAFB fence was in place for more than 50 years. When Diamond Rock and Marchman acquired their properties in Section 36, the

---

[4] On November 1, 2010, the property jointly owned by the Simson Trust and the Haynes Trust in Section 36 was transferred to Gettysburg Ltd. and Hinkle Land Investments, LLC as joint owners, and Gettysburg Ltd. and Hinkle Land Investments, LLC were substituted as parties in this lawsuit by Stipulated Order (Doc. No. 83).

Original KAFB Fence was considered to be the Common Section Boundary. (Doc. No. 63, Ex. 1 Bryan Hinkle Decl. ¶ 9.)

In 1992, the United States Department of Defense ordered another survey of the boundary between Sections 1 and 36 from Koogle & Pouls Engineering, Inc. ("Koogle Survey"). The Koogle Survey showed a different boundary between Sections 1 and 36 that was at an angle to and farther north than the boundary shown by the Black Survey. In the Koogle Survey, a triangular shaped piece of property consisting of approximately 40 acres that had previously been considered part of Section 36, was instead shown as part of Section 1.

On October 4, 1995, Mark S. Aucker recorded an instrument entitled "Deed" ("Aucker Deed") in the Bernalillo County real property records. Under the Aucker Deed, Mr. Aucker claimed that he owned a triangular shaped piece of property consisting of approximately 43.549 acres ("Triangle Property"). The Triangle Property appears to encompass the 40-acre piece of property that was included in Section 1 by the Koogle Survey but that was formerly thought to be part of Section 36. (Doc. No. 45, Ex. 1.)

On November 22, 1995, Mr. Aucker purported to transfer the Triangle Property to Mesa Investments Group, Inc. ("Mesa") by a deed that was recorded in the Bernalillo County real property records. (Doc. No. 45, Ex. 2.) On August 21, 1996, Mesa purported to transfer its interest in the Triangle Property to the United States by Quit Claim deed ("Mesa Deed"), which was also recorded in the Bernalillo County property records.

Beginning in 1998, the Bernalillo County Treasurer issued property tax assessments for the Triangle Property to KAFB. (Doc. No. 45, Ex. 4.) In 2008, Bernalillo County issued a land ownership map showing the Triangle Property located in Section 1. (*Id.* at 10.) The tax assessments and the land ownership map are public records.

In January 2006, KAFB began building a new fence along the boundary line shown on the Koogle Survey ("New KAFB Fence").

In January 2007, Hinkle Homes Company, on its own behalf and on behalf of Diamond Rock, Marchman and Investment Company of the Southwest, asked the Bureau of Land Management ("BLM") to perform an official cadastral survey to determine the location of the Common Section Boundary. On June 20, 2007, the BLM completed the survey ("Dependent Resurvey") of part of the east boundary of Township 9 North, Range 4 East, N.M.P.M. and part of the east and south boundaries of Township 10 North, Range 4 East, N.M.P.M. The Dependent Resurvey shows the Common Section Boundary in a location south of the boundary shown on the Koogle Survey and north of the boundary on which the Original KAFB Fence was built.

After completion of the Dependent Resurvey, the BLM published its findings in a Notice of Filing in the Federal Register. *Notice of Filing of Plats of Survey; New Mexico*, 72 Fed. Reg. 38100 (July 12, 2007). On August 10, 2007, KAFB filed a protest to the Dependent Resurvey with the New Mexico State BLM Director. On October 15, 2007, the BLM State Director rejected KAFB's protest, and KAFB appealed to the United States Department of the Interior, Interior Board of Land Appeals ("IBLA").

On December 16, 2008, Mr. Robert A. Casias, Chief Cadastral Surveyor in the New Mexico State BLM office, informed Hinkle Homes Company by letter that the BLM intended to withdraw the Dependent Resurvey because the BLM failed to obtain the required written permission from KAFB to perform the Dependent Resurvey.

On January 13, 2009, the IBLA entered an Order ("IBLA Order") setting aside the Dependent Resurvey and remanding the protest. (Doc. No. 33, Ex. 2.) In January 2009, the BLM withdrew the Dependent Resurvey. *Notice of Withdrawal of Filing of Plat of Survey; New*

*Mexico*, 74 Fed. Reg. 4458 (Jan. 26, 2009).

On June 18, 2010, Investment Company filed the Complaint For Declaratory Judgment (Doc. No. 1) ("Complaint") in which Investment Company asks the Court to enter a declaratory judgment: 1) that the Dependent Resurvey is the best evidence of the location of the Common Section Boundary; 2) that the Dependent Resurvey correctly depicts the location of the Common Section Boundary; and 3) that the Common Section Boundary is located as shown on the Dependent Resurvey. (Compl. at 8.) Alternatively, Investment Company asks the Court to declare that there has been a longstanding dispute between the United States and the Section 36 Owners as to the location of the Common Section Boundary that is sufficient to warrant the Court's application to the BLM to conduct a cadastral resurvey of the Common Section Boundary under 43 U.S.C. § 773.[5] (*Id.* at 8-9.)

On August 12, 2010, Diamond Rock and Marchman filed their Answer To Complaint For Declaratory Judgment And Counterclaim And Crossclaim (Doc. No. 24) asserting *inter alia*, crossclaims against the United States for removal of the New KAFB Fence and for declaratory judgment as to the location of the Common Section Boundary. (*Id.* ¶¶ 18-28.)

---

[5] Section 773 states in relevant part,
[u]pon the application of the owners of three-fourths of the privately owned lands in any township covered by public-land surveys, more than 50 per centum of the area of which townships is privately owned, . . . the Secretary [of the Interior], or such officer as he may designate, shall be authorized in his discretion to cause to be made a resurvey or retracement of the lines of said township and to set permanent corners and monuments in accordance with the laws and regulations governing surveys and resurveys of public lands. . . . Similar resurveys and retracements may be made on the application, accompanied by the requisite deposit, of any court of competent jurisdiction, the returns of such resurvey or retracement to be submitted to the court. . .
43 U.S.C. § 773.

II. The United States' Motion

The United States contends, and Diamond Rock and Marchman do not dispute, that although the crossclaims ask for removal of the New KAFB Fence and for declaratory judgment as to the location of the Common Section Boundary, the crossclaims actually assert claims under the Quiet Title Act ("QTA"). The QTA provides, "(a) The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, . . ." 28 U.S.C. § 2409a (a). In the Motion, the United States asks the Court to dismiss Diamond Rock's and Marchman's crossclaims for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) because Diamond Rock's and Marchman's crossclaims are barred by the twelve-year statute of limitations set forth in the QTA, which states,

> (g) Any civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

28 U.S.C. § 2409a (g). "Timeliness under subsection [g] is a jurisdictional prerequisite to suit under section 2409a." *Knapp v. United States*, 636 F.2d 279, 282 (10th Cir. 1980).

The United States contends that Diamond Rock and Marchman should be charged with constructive notice of the United States' claim to the Triangle Property and the disputed boundary between Section 1 and Section 36 through the Mesa Deed. The United States argues that Diamond Rock's and Marchman's crossclaims accrued on August 16, 1996, the date that the Mesa Deed transferring the Triangle Property to the United States was filed of record. Because the Mesa Deed was recorded approximately fourteen years prior to the date the crossclaims were filed, the United States contends that the crossclaims are time-barred and must be dismissed for

lack of jurisdiction. Alternatively, the United States argues that the crossclaims should be dismissed as untimely because the crossclaims accrued in 1992, when the Koogle Survey was completed or in 1947, when the United States initiated the eminent domain proceeding to acquire land including Section 1.

III. Discussion

A. The crossclaims did not accrue on the date that the Mesa Deed was recorded.

"Because [the QTA] limits the sovereign immunity of the United States, it must be interpreted according to federal law." *Amoco Production Co. v. United States*, 619 F.2d 1383, 1337 (10th Cir. 1980). Questions involving ownership, transfer and title to real estate, however, have traditionally been resolved according to the laws of the state where the realty is located. *Id.* "Local practices and local rules are particularly indicative of whether a party should have known a relevant fact." *Amoco Production*, 619 F.2d at 1387. New Mexico statutes provide that recorded instruments give "notice to all the world of the existence and contents of the instruments so recorded from the time of recording." NMSA 1978 § 14-9-2 (1991). However, a recorded instrument gives actual notice only to those who have subsequent dealings with the property, and a recorded instrument, "imputes notice only to those who are bound to search for it." *Romero v. Sanchez*, 492 P.2d 140, 144 (N.M. 1971). In *Romero*, the New Mexico Supreme Court elaborated on the meaning of constructive notice:

> [U]nder the recording statutes, the proper record of an instrument authorized to be recorded is notice to all the world. But this means simply that the record is open to all, and is notice to interested parties. The record of an instrument is notice only to those who are bound to search for it. It is not a publication to the world at large. Those who, by the terms of the recording laws, are charged with constructive notice of the record of an instrument affecting land are, therefore, those who are bound to search the records for that particular instrument.

*Id.* at 143.

9

In order to determine whether Diamond Rock's and Marchman's crossclaims accrued on the date that the Mesa Deed was filed of record, the Court must determine whether Diamond Rock and Marchman, or their predecessors in interest, knew or should have known of the Mesa Deed. *Amoco Production*, 619 F.2d at 1577. In other words, Diamond Rock and Marchman will be charged with constructive notice of the Mesa Deed if they should have discovered the Mesa Deed "in the exercise of ordinary diligence" in their dealings with their own properties. *Romero*, 492 P.2d at 144.

Bryan Hinkle's declaration states that Diamond Rock and Marchman "had no knowledge of a quitclaim deed from Mesa Investment Group to the United States dated August 16, 1996 . . . until the United States filed its motion to dismiss Plaintiff's complaint." (Doc. No. 63, Ex. 1, Bryan Hinkle Decl. ¶ 12.) The affidavit of William K. Wooten, Vice President of Fidelity National Title Company, states that "[t]he title search relating to the lands in Section 36 would not have discovered, and it did not discover, [the Mesa] Quitclaim deed." (Doc. No. 49, Ex. 2, Wooten Aff. ¶ 6.)  Diamond Rock and Marchman argue that since the Mesa Deed was never part of the Section 36 chain of title, Diamond Rock and Marchman should not be charged with constructive notice of the United States' claim to the Triangle Property purportedly conveyed by the Mesa Deed.

As the Court concluded in its Memorandum Opinion and Order (Doc. No. 85), the Mesa Deed is a "stray" deed that would not have been discovered by a reasonable title search related to property in Section 36. Therefore, Diamond Rock and Marchman cannot be charged with constructive notice of the United States' interest in the Triangle Property described in the Mesa Deed or of the boundary dispute revealed by the Mesa Deed. Consequently, Diamond Rock's and Marchman's crossclaims did not accrue in 1996 when the Mesa Deed was recorded.

### B. The crossclaims did not accrue in 1992 when the Koogle Survey was completed.

Next, the United States argues that throughout the last fifty years, the Common Section Boundary has been the subject of an ongoing dispute and that the Koogle Survey was commissioned in 1992 in response to this dispute. The United States contends that Diamond Rock and Marchman, or their predecessors, should have been aware of the ongoing boundary dispute since at least 1992 when the Koogle Survey was completed. The United States cites as support *Vincent Murphy Chevrolet, Inc. v. United States,* in which the Tenth Circuit Court of Appeals, applying New Mexico law, ruled that a claim accrues under the QTA when a plaintiff gains a "reasonable awareness that the government claims some interest adverse to the plaintiff." 766 F.2d 449, 452 (10th Cir. 1985) (citing, *Knapp v. United States*, 636 F.2d 279, 283 (10th Cir.1980)). However, the United States presents no evidence that Diamond Rock or Marchman or their predecessors knew or should have known about the ongoing boundary dispute or the Koogle Survey. Bryan Hinkle testified that since the 1960's, he hiked and drove over the area now claimed to be part of Section 1 without any objection from KAFB representatives. (Doc. No. 63, Ex. 1 Bryan Hinkle Decl. ¶ 8.) In addition, the Koogle Survey was not recorded in the property records; thus, Diamond Rock and Marchman also cannot be charged with constructive notice of the Koogle Survey.

The doctrine of constructive notice is a harsh doctrine which should be applied reluctantly and construed strictly. *See Amoco Production*, 619 F.2d at 1388 (stating that the doctrine of constructive notice creates a fiction and deals with hypothetical facts). Because there is no evidence that the United States was claiming to own the Triangle Property prior to 1992 and because the 1992 Koogle Survey was not recorded in the real property records, Diamond

Rock and Marchman cannot be charged with constructive notice of the alleged ongoing boundary dispute, and their crossclaims did not accrue in 1992 when the Koogle Survey was performed.

### C. The crossclaims did not accrue at the time of the 1947 eminent domain proceeding.

Next, the United States asserts that Diamond Rock and Marchman should be charged with knowledge of the United States' adverse interest to the Triangle Property by the 1947 Declaration of Taking (Doc. No. 45, Ex. 5) under which the United States initiated an eminent domain proceeding and eventually took title to Section 1. As the Court discussed in its Memorandum Opinion and Order (Doc. No. 85), a copy of the Declaration of Taking was attached to the United States' Memorandum in support of its Motion (Doc. No. 45, Ex. 5), but the property description labeled as "Schedule A" was not attached to the Declaration of Taking. Thus, the Court, on the record before it, has no description of the lands taken in the 1947 eminent domain case. However, the United States also did not dispute that the Declaration of Taking described the land in Section 1 ". . . by aliquot parts or fractional lots utilized in the Public Land Survey System that were not specific as to physical line locations." (Compl. at ¶ 10; Doc. No. 45 ¶ 13). And it is undisputed that Section 36 is not mentioned in the Declaration of Taking. The United States' essentially argues that the Declaration of Taking provided notice of its interest in the Triangle Property because the Triangle Property is part of Section 1; but that argument begs the question, "what constitutes Section 1?" On the record before it, the Court finds that the Declaration of Taking, would not have provided notice that the United States claimed land that was considered part of Section 36. Thus, Diamond Rock's and Marchman's crossclaims did not accrue in 1947.

D. Diamond Rock's and Marchman's crossclaims accrued in 2006.

In their Response, Diamond Rock and Marchman assert that at the earliest, their crossclaims accrued in 2006 when the United States began building the New KAFB Fence. The Court agrees. The evidence shows that prior to 2006 there was no indication that the United States claimed to own land beyond the Original KAFB Fence, either in the property records or on the ground. In his declaration, Bryan Hinkle testified that since the 1960's he went hiking and "four-wheeling" on the area considered part of the Triangle Property without objection from the United States. (Doc. No. 63, Ex. 1, Bryan Hinkle Decl. ¶ 4.) Bryan Hinkle testified that from the 1960's until 2006, he and the other Section 36 landowners considered the Original KAFB Fence to be the Common Section Boundary. (*Id.* at ¶ 5.) The Court finds that until the United States began to construct the New KAFB Fence, Diamond Rock, Marchman and the Section 36 Owners could not reasonably have become aware of the United States' claim to the Triangle Property that they previously considered part of Section 36. Therefore, Diamond Rock's and Marchman's crossclaims accrued at the earliest in 2006 and were filed well within the twelve-year statute of limitations in the QTA.

E. The crossclaims set forth Diamond Rock's and Marchman's property interests with sufficient particularity.

Finally, the United States argues that the crossclaims should be dismissed under Fed. R. Civ. P. 12(b)(6) because they have failed to comply with 28 U.S.C. § 2409a (d). Section 2409a (d) of the QTA requires a claimant to "set forth with particularity the nature of the right, title, or interest which the [claimant] claims in the real property [and] the circumstances under which it was acquired. . . ." 28 U.S.C. § 2409a (d). The Court finds that the crossclaims state with sufficient particularity Diamond Rock's and Marchman's ownership interests and the manner in

13

which they acquired their respective properties. Hence, this alternative basis upon which to dismiss the crossclaims is without merit.

      IT IS ORDERED that the United States' Rule 12(b)(1) Fed. R. Civ. P. Motion To Dismiss Defendants Diamond Rock Development's and Herbert Marchman's Crossclaim Against The United States Due To Lack Of Subject Matter Jurisdiction (Doc. No. 51) is denied.

                                        */s/ James A. Parker*
                                      SENIOR UNITED STATES DISTRICT JUDGE