UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

INVESTMENT COMPANY OF THE
SOUTHWEST, INC.,

    Plaintiff,

vs.                                                             10-CV-587 JP/LFG

UNITED STATES OF AMERICA,
CITY OF ALBUQUERQUE, NEW MEXICO,
HERBERT L. MARCHMAN, Trustee of the Shareholder
Liquidating Trust Dated June 1, 1988,
DIAMOND ROCK DEVELOPMENT, INC.,
SOUTHWEST DEVELOPMENT GROUP, LLC,
ENCHANTMENT INVESTMENTS, LTD.,
GETTYSBURG, LTD., and
HINKLE LAND INVESTMENT, LLC,

    Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (Doc. No. 53)**

On October 25, 2010, Defendant the United States of America ("United States") filed United States' Rule 12(b)(1) Fed. R. Civ. P. Motion To Dismiss Defendants John Mitchell Simson's And Jeffrey Paul Simson's Crossclaim Against The United States Due To Lack Of Subject Matter Jurisdiction (Doc. No. 53) ("Motion") and United States' Memorandum In Support of Rule 12(b)(1) Fed. R. Civ. P. Motion To Dismiss Defendants John Mitchell Simson's And Jeffrey Paul Simson's Crossclaim Against The United States Due To Lack Of Subject Matter Jurisdiction (Doc. No. 54). On November 12, 2010, Defendants John Mitchell Simson and Jeffrey Paul Simson, as Trustees of the George Simson and Helene Simson Family Trust ("Simson Trust"), Margaret Ann Dotson, as Trustee of the Helen Lewis Haynes Trust, UAD 2-

1

16-81 ("Haynes Trust"), Gettysburg Ltd., a Delaware corporation ("Gettysburg"), and Hinkle Land Investments LLC, a New Mexico limited liability company ("Hinkle LLC") filed their Response To United States' Rule 12( b)(1), Fed. R. Civ. P. Motion To Dismiss Defendants Simson Trust's And Haynes Trust's Crossclaim Against The United States Due To Lack Of Subject Matter Jurisdiction (Doc. No. 69) ("Response").  On November 29, 2010, the United States filed United States' Reply To Response Of Simson Trust and Haynes Trust To 12(b)(1) Motion To Dismiss Crossclaim Due To Lack Of Subject Matter Jurisdiction (Doc. No. 72) ("Reply"). Because the Answer Counterclaim and Crossclaim Of Defendants John Michael Simson And Jeffrey Paul Simson, As Trustees Of The George Simson and Helene Simson Family Trust And Margaret Ann Dotson, As Trustee Of The Helen Lewis Haynes Trust, UAD 2-16-18 [sic] (Doc. No. 29) was filed within the twelve-year statute of limitations under the Quiet Title Act, 28 U.S.C. § 2409a (g), the Court will deny the Motion.[1]

The Simson Trust and the Haynes Trust were originally named as defendants in this action.  On December 6, 2010, a Stipulated Order (Doc. No. 83) was entered substituting

---

[1] On December 13, 2010, the Court issued a Memorandum Opinion and Order (Doc. No. 85) denying the United States' Rule 12(b)(1), Fed. R. Civ. P. Motion To Dismiss Plaintiff's Complaint Due To Lack Of Subject Matter Jurisdiction (Doc. No. 44). While recognizing the factual differences presented here, the United States has made similar legal arguments to support this Motion and also has incorporated the exhibits from its Memorandum In Support of Rule 12(b)(1), Fed. R. Civ. P. Motion To Dismiss Plaintiff's Complaint Due To Lack Of Subject Matter Jurisdiction (Doc. No. 45) and in its Memorandum In Support Of Rule 12(b)(6), Fed. R. Civ. P., Motion To Dismiss For Plaintiff's Failure To State A Claim Upon Which Relief Can Be Granted (Doc. No. 33). In addition to the arguments asserted in their Response, the Simson Trust and the Haynes Trust have incorporated the Plaintiff's Response To The United States' Fed. R. Civ. P. 12(b)(1) Motion To Dismiss Plaintiff's Complaint Due To Lack Of Subject Matter Jurisdiction (Doc. No. 49) and the Response Of Diamond Rock Development, Inc. And Herb Marchman To United States' Rule 12(b)(1) Fed. R. Civ. P. Motion To Dismiss (Doc. No. 63). The Court has considered the incorporated arguments and exhibits in connection with this Memorandum Opinion and Order and will refer to exhibits by docket number and exhibit number or letter.

Gettysburg and Hinkle LLC as real parties in interest to all claims and causes of action of the Simson Trust and the Haynes Trust.  In this Memorandum Opinion and Order, the Court has considered all relevant pleadings and documents of record filed on behalf of the Simson Trust and Haynes Trust, and the Court has applied the relevant facts, arguments and evidence in those pleadings and documents to Gettysburg and Hinkle LLC.

I.  Standard of Review

Rule 12(b)(1) motions to dismiss for lack of jurisdiction are characterized as either (1) facial attacks or (2) factual attacks. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir.1995). A facial attack is limited to the factual allegations supporting the claim, which a court must accept as true. *Id.* at 1002. In a factual attack, the movant goes beyond the allegations in the pleadings and challenges the facts upon which subject matter jurisdiction depends. When faced with a factual attack, a court must look beyond the pleadings at documentary and even testimonial evidence. *Id.* at 1003. In the Motion and the Response, the United States, Gettysburg and Hinkle have presented documentary evidence and testimonial affidavits. Thus, the Motion and the Response present a factual dispute, and the Court will consider the relevant documentary and testimonial evidence.

II. Background

In 1958 at an auction of property by the State of New Mexico, the Simson Trust purchased an undivided three-fourths interest and the Haynes Trust acquired an undivided one-fourth interest in a piece of property described as Section 36, Township 10 North, Range 4 East, N.M.P.M., Bernalillo County, New Mexico: SE1/4 SE1/4 ("Property"). (Doc. No. 69, Ex. 1, Gene Hinkle Decl. ¶ 29; Doc. No. 29, Ans. Countercl. Crosscl. ¶ 16.) After the Simson Trust and the Haynes Trust made all of the payments, the State of New Mexico filed a Patent granting the

3

Property to Simson Trust and the Haynes Trust in 1989. (Doc. No. 69, Ex. E.) On November 1, 2010, Gettysburg and Hinkle LLC each acquired an undivided one-half interest in the Property. (Doc. No. 69, Ex. 1, Gene Hinkle Decl. at ¶ 28.) Other owners of property in Section 36, Township 10 North, Range 4 East, N.M.P.M. are Plaintiff Investment Company of the Southwest, Defendant Southwest Development Group, LLC, Defendant Enchantment Investments, Ltd., Defendant Diamond Rock Development, Inc., Defendant Herbert L. Marchman, trustee of the Shareholder Liquidating Trust dated June 1, 1988, and Defendant City of Albuquerque ("Section 36 Owners").

The United States owns a piece of property directly south of Section 36, located in Section 1, Township 9 North, Range 4 East, N.M.P.M., Bernalillo County, New Mexico ("KAFB Property" or "Section 1"), which is occupied by Kirtland Air Force Base ("KAFB"). The north boundary of Section 1 is supposed to be the same as the south boundary of Section 36 ("Common Section Boundary"). The Common Section Boundary is also part of the dividing line between Township 9 North and Township 10 North, Range 4 East, N.M.P.M., Bernalillo County New Mexico.

In the late 1800s and early 1900s, the United States transferred to the State of New Mexico a large tract of land which included Sections 1 and 36. (Doc. No. 29 ¶ 26, Exs. A-E.) In 1947, the United States reacquired a large tract of land including Section 1 by eminent domain, which is now occupied by Kirtland Air Force Base ("KAFB"). (Mot. Ex. 5, Declaration of Taking.) In 1950, the United States ordered a survey from Black & Veatch surveyors to determine the boundaries of KAFB including the boundary line between Sections 1 and 36 ("Black Survey"). In the early 1950s, KAFB erected a fence along the boundary shown on the Black Survey ("Original KAFB Fence"). The Original KAFB fence was in place for more than

50 years.

Gene Hinkle, a principal in Hinkle LLC, attended a land auction held in 1958 by the State of New Mexico where he acquired Lot 2 and NW1/4 SE1/4 of Section 36 in 1958. (Doc. No. 69, Ex. 1 Gene Hinkle Decl. ¶ 2.) Mr. Hinkle acquired Lot 2 and NW1/4 SE1/4 of Section 36 on behalf of Land Investment Company. Mr. Hinkle transferred this property to Defendant Diamond Rock Development, Inc. ("Diamond Rock"), a company in which Mr. Hinkle is a shareholder, officer and director. (*Id.* at ¶¶ 1, 7.) Mr. Hinkle's declaration states that at the auction, the New Mexico State Land Office represented that the Original KAFB Fence marked the boundary between Section 36 and Section 1. (*Id.* at ¶ 8.)

In 1992, the United States Department of Defense ordered another survey of the boundary between Sections 1 and 36 from Koogle & Pouls Engineering, Inc. ("Koogle Survey"). The Koogle Survey showed a different boundary between Sections 1 and 36 at an angle to and farther north than the boundary shown by the Black Survey. In the Koogle Survey, a triangular shaped piece of property consisting of approximately 40 acres that had previously been considered part of Section 36, was instead shown as part of Section 1.

On October 4, 1995, Mark S. Aucker recorded an instrument entitled "Deed" ("Aucker Deed") in the Bernalillo County real property records. Under the Aucker Deed, Mr. Aucker claimed that he owned a triangular shaped piece of property consisting of approximately 43.549 acres ("Triangle Property"). The Triangle Property appears to encompass the 40-acre piece of property that was included in Section 1 by the Koogle Survey but that was formerly thought to be part of Section 36. (Doc. No. 45, Ex. 1.)

On November 22, 1995, Mr. Aucker purported to transfer the Triangle Property to Mesa Investments Group, Inc. ("Mesa") by a deed that was recorded in the Bernalillo County real

property records. (Doc. No. 45, Ex. 2.) On August 21, 1996, Mesa purported to transfer its interest in the Triangle Property to the United States by Quit Claim deed ("Mesa Deed"), which was also recorded in the Bernalillo County property records.

Beginning in 1998, the Bernalillo County Treasurer issued property tax assessments for the Triangle Property to KAFB. (Doc. No. 45, Ex. 4.) In 2008, Bernalillo County issued a land ownership map showing the Triangle Property located in Section 1. (*Id.* at 10.) The tax assessments and the land ownership map are public records.

In January 2006, KAFB began building a new fence along the boundary line shown on the Koogle Survey ("New KAFB Fence").

In January 2007, Hinkle Homes Company, on its own behalf and on behalf of Diamond Rock, Herbert L. Marchman, as trustee of the Shareholder Liquidating Trust Dated June 1, 1988, and Investment Company of the Southwest, asked the Bureau of Land Management ("BLM") to perform an official cadastral survey to determine the location of the Common Section Boundary. On June 20, 2007, the BLM completed the survey ("Dependent Resurvey") of part of the east boundary of Township 9 North, Range 4 East, N.M.P.M. and part of the east and south boundaries of Township 10 North, Range 4 East, N.M.P.M. The Dependent Resurvey shows the Common Section Boundary in a location south of the boundary shown on the Koogle Survey and north of the boundary on which the Original KAFB Fence was built.

After completion of the Dependent Resurvey, the BLM published its findings in a Notice of Filing in the Federal Register. *Notice of Filing of Plats of Survey; New Mexico*, 72 Fed. Reg. 38100 (July 12, 2007). On August 10, 2007, KAFB filed a protest to the Dependent Resurvey with the New Mexico State BLM Director. On October 15, 2007, the BLM State Director rejected KAFB's protest, and KAFB appealed to the United States Department of the Interior,

Interior Board of Land Appeals ("IBLA").

On December 16, 2008, Mr. Robert A. Casias, Chief Cadastral Surveyor in the New Mexico State BLM office, informed Hinkle Homes Company by letter that the BLM intended to withdraw the Dependent Resurvey because the BLM failed to obtain the required written permission from KAFB to perform the Dependent Resurvey.

On January 13, 2009, the IBLA entered an Order ("IBLA Order") setting aside the Dependent Resurvey and remanding the protest. (Doc. No. 33, Ex. 2.) In January 2009, the BLM withdrew the Dependent Resurvey. *Notice of Withdrawal of Filing of Plat of Survey; New Mexico*, 74 Fed. Reg. 4458 (Jan. 26, 2009).

On June 18, 2010, Investment Company filed the Complaint For Declaratory Judgment (Doc. No. 1) ("Complaint") in which Investment Company asks the Court to enter a declaratory judgment: 1) that the Dependent Resurvey is the best evidence of the location of the Common Section Boundary; 2) that the Dependent Resurvey correctly depicts the location of the Common Section Boundary; and 3) that the Common Section Boundary is located as shown on the Dependent Resurvey. (Compl. at 8.) Alternatively, Investment Company asked the Court to declare that there has been a longstanding dispute between the United States and the Section 36 Owners as to the location of the Common Section Boundary that is sufficient to warrant the Court's application to the BLM to conduct a cadastral resurvey of the Common Section

Boundary under 43 U.S.C. § 773.[2] (*Id.* at 8-9.)

On August 25, 2010, the Simson Trust and the Haynes Trust filed their Answer Counterclaim and Crossclaim Of Defendants John Michael Simson And Jeffrey Paul Simson, As Trustees Of The George Simson and Helene Simson Family Trust And Margaret Ann Dotson, As Trustee Of The Helen Lewis Haynes Trust, UAD 2-16-18 [sic] (Doc. No. 29) asserting *inter alia*, crossclaims against the United States for declaratory judgment that the Common Section Boundary is the boundary shown in the Black Survey[3] and for removal of the New KAFB Fence. (*Id.* ¶ 37.)

II. The United States' Motion

The United States contends, and Gettysburg and Hinkle LLC do not dispute, that although the crossclaims ask for removal of the New KAFB Fence and for declaratory judgment as to the location of the Common Section Boundary, the crossclaims actually assert claims under the Quiet Title Act ("QTA"). The QTA provides, "[t]he United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in

---

[2] Section 773 states in relevant part,
[u]pon the application of the owners of three-fourths of the privately owned lands in any township covered by public-land surveys, more than 50 per centum of the area of which townships is privately owned, . . . the Secretary [of the Interior], or such officer as he may designate, shall be authorized in his discretion to cause to be made a resurvey or retracement of the lines of said township and to set permanent corners and monuments in accordance with the laws and regulations governing surveys and resurveys of public lands. . . . Similar resurveys and retracements may be made on the application, accompanied by the requisite deposit, of any court of competent jurisdiction, the returns of such resurvey or retracement to be submitted to the court. . .
43 U.S.C. § 773.

[3] The Simson Trust and the Haynes Trust also allege that several other public survey maps depict the same boundary as is shown in the Black Survey and that these public survey maps were recognized by the United States in 1962.

which the United States claims an interest, . . . ." 28 U.S.C. § 2409a (a). In the Motion, the United States asks the Court to dismiss Gettysburg's and Hinkle LLC's crossclaims for lack of jurisdiction because the crossclaims are barred by the twelve-year statute of limitations set forth in the QTA, which states,

> (g) Any civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

28 U.S.C. § 2409a (g). "Timeliness under subsection [g] is a jurisdictional prerequisite to suit under section 2409a." *Knapp v. United States*, 636 F.2d 279, 282 (10th Cir. 1980).

The United States contends that Gettysburg and Hinkle, LLC should be charged with constructive notice of the United States' claim to the Triangle Property and the disputed boundary between Section 1 and Section 36 through the Mesa Deed. The United States argues that Gettysburg's and Hinkle LLC's crossclaims accrued on August 16, 1996, the date that the Mesa Deed transferring the Triangle Property to the United States was filed of record. Because the Mesa Deed was recorded approximately fourteen years prior to the date the crossclaims were filed, the United States contends that the crossclaims are time-barred and must be dismissed for lack of jurisdiction. Alternatively, the United States argues that the crossclaims should be dismissed as untimely because the crossclaims accrued in 1992, when the Koogle Survey was completed or in 1947, when the United States initiated the eminent domain proceeding to acquire land including Section 1.

III. Discussion

    A.  <u>The crossclaims did not accrue on the date that the Mesa Deed was recorded.</u>

"Because [the QTA] limits the sovereign immunity of the United States, it must be

interpreted according to federal law." *Amoco Production Co. v. United States*, 619 F.2d 1383, 1337 (10th Cir. 1980). Questions involving ownership, transfer and title to real estate, however, have traditionally been resolved according to the laws of the state where the realty is located. *Id.* "Local practices and local rules are particularly indicative of whether a party should have known a relevant fact." *Amoco Production*, 619 F.2d at 1387. New Mexico statutes provide that recorded instruments give "notice to all the world of the existence and contents of the instruments so recorded from the time of recording." NMSA 1978 § 14-9-2 (1991). However, a recorded instrument gives actual notice only to those who have subsequent dealings with the property, and a recorded instrument, "imputes notice only to those who are bound to search for it." *Romero v. Sanchez*, 492 P.2d 140, 144 (N.M. 1971). In *Romero*, the New Mexico Supreme Court elaborated on the meaning of constructive notice:

> [U]nder the recording statutes, the proper record of an instrument authorized to be recorded is notice to all the world. But this means simply that the record is open to all, and is notice to interested parties. The record of an instrument is notice only to those who are bound to search for it. It is not a publication to the world at large. Those who, by the terms of the recording laws, are charged with constructive notice of the record of an instrument affecting land are, therefore, those who are bound to search the records for that particular instrument.

*Id.* at 143.

In order to determine whether Gettysburg's and Hinkle, LLC's crossclaims accrued on the date that the Mesa Deed was filed of record, the Court must determine whether Gettysburg and Hinkle, LLC, or their predecessors in interest, knew or should have known of the Mesa Deed. *Amoco Production*, 619 F.2d at 1577. In other words, Gettysburg and Hinkle, LLC will be charged with constructive notice of the Mesa Deed if they should have discovered the Mesa

Deed "in the exercise of ordinary diligence" in their dealings with the Property.[4] *Romero*, 492 P.2d at 144.

Gene Hinkle's declaration states that he ordered a title commitment in 2010 for the Property from Fidelity National Title, but the title commitment ". . . never disclosed the Mesa Investment Group to USA deed." (Doc. No. 69, Ex. 1, Gene Hinkle Decl. ¶ 34.) The affidavit of William K. Wooten, Vice President of Fidelity National Title Company, states that "[t]he title search relating to the lands in Section 36 would not have discovered, and it did not discover, [the Mesa] Quitclaim deed." (Doc. No. 49, Ex. 2, Wooten Aff. ¶ 6.) Gettysburg and Hinkle, LLC argue that since the Mesa Deed was never part of the Section 36 chain of title, Gettysburg and Hinkle, LLC should not be charged with constructive notice of the United States' claim to the Triangle Property purportedly conveyed by the Mesa Deed.

As the Court concluded in its Memorandum Opinion and Order (Doc. No. 85), the Mesa Deed is a "stray" deed that would not have been discovered by a reasonable title search related to property in Section 36. Therefore, Gettysburg and Hinkle, LLC cannot be charged with constructive notice of the United States' interest in the Triangle Property described in the Mesa Deed or of the boundary dispute revealed by the Mesa Deed. Consequently, Gettysburg's and Hinkle, LLC's crossclaims did not accrue in 1996 when the Mesa Deed was recorded.

> B. The crossclaims did not accrue in 1992 when the Koogle Survey was completed.

Next, the United States argues that throughout the last fifty years, the Common Section

---

[4] Although the Simson Trust and the Haynes Trust argue that they acquired their interest in the Property prior to the recording of the Mesa Deed; and therefore, they cannot be charged with constructive notice of the Mesa Deed, their successors in interest, Gettysburg and Hinkle, LLC, can be charged with constructive notice of the Mesa Deed because they acquired their interests in the Property after the Mesa Deed was recorded.

Boundary has been the subject of an ongoing dispute and that the Koogle Survey was commissioned in 1992 in response to this dispute. The United States contends that Gettysburg and Hinkle, LLC, or their predecessors, should have been aware of the ongoing boundary dispute since at least 1992 when the Koogle Survey was completed. The United States cites as support *Vincent Murphy Chevrolet, Inc. v. United States,* in which the Tenth Circuit Court of Appeals, applying New Mexico law, ruled that a claim accrues under the QTA when a plaintiff gains a "reasonable awareness that the government claims some interest adverse to the plaintiff." 766 F.2d 449, 452 (10th Cir. 1985) (citing, *Knapp v. United States*, 636 F.2d 279, 283 (10th Cir.1980)). However, the United States presents no evidence that Gettysburg or Hinkle, LLC or their predecessors knew or should have known about the ongoing boundary dispute or the Koogle Survey. Gene Hinkle testified that he has personal knowledge of the ownership and boundaries of the Property "because since 1958 I have been actively involved in trying to develop and acquire properties in Section 36." (Gene Hinkle Decl. ¶ 30.) According to Mr. Hinkle, until the New KAFB Fence was erected in 2006, the owners of the Property exercised control over the disputed Triangle Property without interference from KAFB personnel. (Doc. No. 69, Ex. 1, Gene Hinkle ¶¶ 26, 31) Gettysburg and Hinkle, LLC also argue that they cannot be charged with constructive notice of the Koogle Survey because it was not recorded in the real property records.

     The doctrine of constructive notice is a harsh doctrine which should be applied reluctantly and construed strictly. *See Amoco Production*, 619 F.2d at 1388 (stating that the doctrine of constructive notice creates a fiction and deals with hypothetical facts). Because there is no evidence that the United States was claiming to own the Triangle Property prior to 1992 and because the 1992 Koogle Survey was not recorded in the real property records, Gettysburg

and Hinkle, LLC cannot not be charged with constructive notice of the alleged ongoing boundary dispute, and their crossclaims did not accrue in 1992 when the Koogle Survey was performed.

### C. The crossclaims did not accrue at the time of the 1947 eminent domain proceeding.

Next, the United States asserts that Gettysburg and Hinkle, LLC should be charged with knowledge of the United States' adverse interest to the Triangle Property by the 1947 Declaration of Taking (Mot. Ex. 5) under which the United States initiated an eminent domain proceeding and eventually took title to Section 1. As the Court discussed in its Memorandum Opinion and Order (Doc. No. 85), a copy of the Declaration of Taking was attached to the United States' Memorandum in support of its motion to dismiss (Doc. No. 45, Ex. 5), but the property description labeled as "Schedule A" was not attached to the Declaration of Taking. Thus, the Court, on the record before it, has no description of the lands taken in the 1947 eminent domain case. However, the United States does not dispute that the Declaration of Taking described the land in Section 1 ". . . by aliquot parts or fractional lots utilized in the Public Land Survey System that were not specific as to physical line locations." (Compl. at ¶ 10; Doc. No. 45 ¶ 13). And it is undisputed that Section 36 is not mentioned in the Declaration of Taking. The United States' essentially argues that the Declaration of Taking provided notice of its interest in the Triangle Property because the Triangle Property is part of Section 1; but that argument begs the question "what constitutes Section 1?" On the record before it, the Court finds that the Declaration of Taking, would not have provided notice that the United States claimed land that was considered part of Section 36. Thus, Gettysburg's and Hinkle, LLC's crossclaims did not accrue in 1947.

D. Gettysburg's and Hinkle, LLC's crossclaims accrued in 2006.

In their Response, Gettysburg and Hinkle, LLC assert that at the earliest, their crossclaims accrued in 2006 when the United States began building the New KAFB Fence. The Court agrees. The evidence shows that prior to 2006 there was no indication that the United States claimed to own land beyond the Original KAFB Fence, either in the property records or on the ground. In his declaration, Bryan Hinkle testified that since the 1960's he went hiking and "four-wheeling" on the area considered part of the Triangle Property without objection from the United States. (Doc. No. 63, Ex. 1, Bryan Hinkle Decl. ¶ 4.) Bryan Hinkle testified that from the 1960's until 2006, he and the other Section 36 landowners considered the Original KAFB Fence to be the Common Section Boundary. (*Id.* at ¶ 5.) The Court finds that until the United States began to construct the New KAFB Fence, Gettysburg's and Hinkle, LLC's predecessors and the other Section 36 Owners could not reasonably have become aware of the United States' claim to the Triangle Property that they considered to be part of Section 36. Therefore, Gettysburg's and Hinkle, LLC's crossclaims accrued at the earliest in 2006 and were filed well within the twelve-year statute of limitations in the QTA.

E. The crossclaims set forth Gettysburg's and Hinkle, LLC's property interests with sufficient particularity.

Finally, the United States argues that the crossclaims should be dismissed under Fed. R. Civ. P. 12(b)(6) because they have failed to comply with 28 U.S.C. § 2409a (d). Section 2409a (d) of the QTA requires a claimant to "set forth with particularity the nature of the right, title, or interest which the [claimant] claims in the real property [and] the circumstances under which it was acquired. . . ." 28 U.S.C. § 2409a (d). The Court finds that the crossclaims state with sufficient particularity Gettysburg's and Hinkle, LLC's ownership interests and the manner in

which they acquired their respective properties. Hence, this alternative basis upon which to dismiss the crossclaims is without merit.

IT IS ORDERED that the United States' Rule 12(b)(1) Fed. R. Civ. P. Motion To Dismiss Defendants John Mitchell Simson's And Jeffrey Paul Simson's Crossclaim Against The United States Due To Lack Of Subject Matter Jurisdiction (Doc. No. 53) is denied.

/s/ James A. Parker
SENIOR UNITED STATES DISTRICT JUDGE